IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>Coast to Coast Cellular, Inc.,<br>                Debtor.<br>_____<br>Eric E. Bononi as Trustee for the Estate of<br>Coast to Coast Cellular, Inc.,<br>                Plaintiff,<br><br>            v.<br><br>National Rural Telecommunications<br>Cooperative,<br>                Defendant | Bankruptcy Case No.15-70602-JAD<br><br>Chapter 7<br><br>Adversary Case No. _____ |

## COMPLAINT

COMES NOW Plaintiff Eric E. Bononi, Trustee, by and through his special counsel, David K. Rudov, Esq. and the law firm of Rudov & Stein, P.C. and Scott M. Hare, Esq. and for his Complaint avers as follows:

### I. PARTIES

1.    Coast to Coast Cellular, Inc. (hereinafter "Coast to Coast") is a Pennsylvania corporation formed on October 10, 1997. Coast to Coast formerly maintained a principal place of business at 1910 Minno Drive, Suite 210, Johnstown, PA 15905. On August 28, 2015, ("Commencement Date"), Coast to Coast filed a chapter 7 bankruptcy proceeding and Eric E. Bononi was appointed the Trustee of the Debtor's estate.

2.    Defendant National Rural Telecommunications Cooperative (hereinafter "NRTC") is a membership cooperative association organized in 1986 under the District of Columbia Cooperative Association Act. NRTC maintains its principal place of business at 2121 Cooperative Way, Herndon, Virginia, 20171.

### II. Jurisdiction and Venue

3.    This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001 and Sections 105, 541 and 542 of title 11 of the United States Code (the

"Bankruptcy Code") seeking a declaration of rights and turnover of property of the Plaintiff's bankruptcy estate.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Standing Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

6. In the event that any part of this adversary proceeding is found to be "noncore," Plaintiff consents to the entry of final orders and judgments by this Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

### III.  History of the Parties

7. Coast to Coast was a Mobile Virtual Network Operator (MVNO). An MVNO is a wireless communication service provider that does not own the wireless network infrastructure over which the MVNO provides services to its own customers. Typically, an MVNO enters into business agreements with a larger and more established mobile network operators to obtain bulk access to network services at wholesale rates. MVNOs contract with larger wireless carriers to gain access for the MVNO's own customers and provide additional revenue to those carriers from sale of their unused bandwidth.

8. Coast to Coast joined NRTC as a member on December 12, 2012 (see Exhibit "A"). By doing so, Coast to Coast received the benefits of using NRTC's wholly-owned MVNO, *Telespire®*, and could thereby provide discounted cellular access to the customers of Coast to Coast.

9. Unlike for-profit corporations, cooperative associations are not operated for the purpose of making a profit for the organization, but rather operate as fiduciaries for the benefit of the members who do business with them. As such, NRTC is a fiduciary of and must act for the primary and mutual benefit of its members, including Coast to Coast. See District of Columbia Cooperative Association Act, D.C. Code § 29-904 (requiring that cooperative associations operate "for the primary and mutual benefit of the patrons of the association").

10. According to NRTC's Annual Report for 2014, *"the National Rural Telecommunications Cooperative (NRTC) represents the technology interests of 1,500 rural*

*utilities and affiliates in 48 states. We help rural electric and telephone utilities strengthen their businesses with solutions uniquely suited to the needs of rural consumers. NRTC was founded in 1986 by electric cooperatives, the National Rural Electric Cooperative Association (NRECA) and the National Rural Utilities Cooperative Finance Corporation (CFC). NRTC provides products and services developed specifically to meet the needs of rural utilities and their customers, such as high-speed Internet access via satellite, full service Internet access and support, integrated smart grid technologies and energy efficiency solutions, wireless technologies, long distance programs, mobile phone service, IP backbone services, and programming distribution rights for video providers. NRTC is driven by our members' commitment to provide their communities with innovative technology solutions and a vision for continued viability. NRTC helps ensure our members' success by aggregating their individual buying power, negotiating national contracts, and supporting business solutions which expand their service offerings. NRTC remains focused on bringing advanced technology to rural America".* See [www.nrtc.coop/pub/us/about](www.nrtc.coop/pub/us/about).

      11.    As a cooperative association, NRTC must operate at cost, must equitably allocate its revenues and expenses, and may not operate as a for-profit corporation. To operate at cost, NRTC must provide services to its members at the cost at which it obtains them, adding only what is necessary to cover NRTC's operating expenses related to the provision of those services and legally required or permitted reserves. If NRTC's revenues exceed its operating costs and expenses, NRTC must allocate that excess — "Net Savings" — to its Patrons as patronage. To the extent NRTC does not pay patronage to the Patrons in cash, NRTC must credit that patronage to its Patrons' capital accounts. NRTC must also issue capital certificates reflecting the amount of patronage credited to each Patron's account. Patronage capital is the property of the Patrons, not NRTC. NRTC must treat all amounts credited to a Patron's capital account as though NRTC had paid them to the Patron in cash and the Patron had then furnished NRTC corresponding amounts for capital. NRTC may not abuse its discretion in the timing and level of patronage capital refunds to the Patrons, and must return the patronage capital to the Patrons within a reasonable time after that patronage is allocated on NRTC's books.

      12.    Thus, in addition to the benefits Coast to Coast received from its membership in NRTC, Coast to Coast is entitled to financial distributions from NRTC. Specifically, as a

member of the NRTC, Coast to Coast is entitled to two Capital Credit Rights based upon its use of the NRTC network, as follows:

    a.    Coast to Coast receives a cash payout equal to 30% of the current year's net taxable savings ("Current Year Patronage"); and,

    b.    Coast to Coast receives 70% of the current year's net taxable savings in the form of an increase to the balance of a Qualified Patronage Capital Certificate ("Retirement Patronage").

13.    On account of its capital credit refunds in the Current Year Patronage identified in paragraph 9(a) above, Coast to Coast received the following cash payments:

    a.    a payment of $338,050.00 on May 31, 2013 for calendar year 2012 (Exhibit B");

    b.    a payment of $186,889.79 on May 30, 2014 for calendar year 2013 (Exhibit "C"); and,

    c.    a payment of $113,513.68 on June 5, 2015 for calendar year 2014 (Exhibit "D").

14.    On account of its capital credit refunds identified in paragraph 9(b) above, as of June 6, 2015, Coast to Coast maintained a Patronage Capital Balance of $1,909,741.26 (Exhibit "E").  NRTC has advised the Trustee that the Patronage Capital Balance may not be immediately "liquid" nor redeemable for cash in the immediate future. The Defendant also alleges that the Trustee may not transfer the Debtor's Membership interest in NRTC without the approval of the Board of Directors of NRTC.

15.    Through this Complaint, the Trustee seeks a declaration to be qualified and recognized as the record title owner of the Debtor's Membership Interest in NRTC as well as the holder and owner of the Coast to Coast Patronage Capital Balance. Further, the Trustee also seeks a declaration of his authority to liquidate the Debtor's interest in the future revenue associated with the retirement of the NRTC Patronage Capital Balance.

### Count I – Determination of Property of the Estate Pursuant to 11 U.S.C. § 541

16. The Plaintiff incorporates by reference paragraph 1 thought 15 above as though fully set forth at length herein.

17. The commencement of this case by the filing of the voluntary petition created an "estate". 11 U.S.C. § 541(a).

18. That estate is comprised of all legal and equitable interests of the Debtor in any property. 11 U.S.C. § 541(a)(1).

19. As of commencement date, the Debtor was vested with a membership interest in NRTC and a Patronage Capital Balance having a stated balance of $1,909,741.26.

20. The Coast to Coast Membership Interest in NRTC and its anticipated future revenue from the retirement of the Patronage Capital Balance are property of the Debtor's estate.

21. Eric E. Bononi, as the Trustee of the Debtor's estate has the authority and duty to act on behalf of the Debtor pursuant to 11 U.S.C. § 704 and to liquidate the Debtor's Membership Interest in NRTC and its Patronage Capital Balance.

WHEREFORE, the Eric E. Bononi prays for a determination that the Debtor's membership interest in NRTC, and its corresponding Patronage Capital Balance, is property of the estate; that all Membership and Patronage Capital Certificates be re-certified to him in his capacity as the Trustee of Coast to Coast and that he be authorized to take those actions necessary to liquidate the Debtor's Membership Interest including its Patronage Capital Balance.

### Count II – Turnover of Information Pursuant to 11 U.S.C. § 542(e).

22. The Plaintiff incorporates by reference paragraph 1 thought 22 above as though fully set forth at length herein.

23. In order to maximize the value of the Debtor's estate, the Trustee will be seeking to liquidate the Patronage Capital Balance and the Membership interest of Coast to Coast in NRTC. The Defendant has opined that neither the Debtor, nor the Trustee acting on behalf of the Debtor, has the authority to transfer its Membership in NRTC without the approval of the NRTC Board of Directors.

24. The Trustee believes that notwithstanding NRTC's stated position, and consistent with the provisions of the By-Laws, Trustee may seek to liquidate the Debtor's Membership

Interest and its Patronage Capital Account. Specifically, Section 4.3 of the NRTC By-Laws provides as follows:

> **Section 4**     **Transfer of Membership-Withdrawal**
>
> a.    Membership in the Association and certificates representing such membership shall not be transferable, except that: (i) in case of a merger or consolidation of a member with another corporation; or (ii) formation of a new organization that is owned, operated and/or controlled by the member, membership may be vested in the successor or new organization, provided the latter is eligible for membership.

25.     As referenced above, there are presently over 1,500 members of NRTC. The Trustee believes, and therefore avers, that subject to the provisions of Section 4.3 of the NRTC By-Laws, there are numerous existing members of NRTC that would have an interest in purchasing the Trustee's ownership interest in Coast to Coast such that the buyer would hold the Coast to Coast Membership interest in NRTC and the associated Patronage Capital Balance. Should an interested buyer seek to acquire the estate's interest in Coast to Coast, it could effect such acquisition in harmony with Section 4.3 through a merger of the business entities.

26.     Alternatively, the Trustee believes that he may not need to sell the Debtor Membership interest in NRTC to realize revenue from the Patronage Capital Balance. Rather, the Trustee may able to locate a party interested in merely purchasing the revenue stream that Coast to Coast would expect to receive in future years resulting from the retirement of the Patronage Capital Balance.

27.     11 U.S.C. § 542(e) provides as follows:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

28.     The Trustee requests that the Defendant turnover all available information in its possession regarding the value of the Debtor's Membership Interest, the value and expected revenue stream deriving from the Patronage Capital Balance, and the identity of the members of the NRTC.

WHEREFORE, the Trustee prays for an Order of Court directing the Defendant to turnover or disclose the requisite recorded information.

        Respectfully submitted,
        Rudov & Stein, P.C.

        /s/ David K. Rudov
        David K. Rudov, Esq.
        Pa. I.D. # 35579
        Special Counsel for Eric E. Bononi, Trustee

        100 First Avenue, Suite 500
        First & Market Building
        Pittsburgh, PA 15222
        drudov@rudovstein.com
        Tel: 412-281-7300

        and

        /s/ Scott M. Hare
        Scott Michael Hare
        Pa I.D. #63818
        Special Counsel for Eric E. Bononi, Trustee

        The Frick Building - Suite 1806
        437 Grant Street
        Pittsburgh, PA 15219
        Scott@ScottLawPGH.com
        Tel: 412-338-8632

Date: January 18, 2016