IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>Coast to Coast Cellular, Inc.,<br>　　　　　Debtor.<br>_____<br>Eric E. Bononi as Trustee for the Estate of<br>Coast to Coast Cellular, Inc.,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>National Rural Telecommunications<br>Cooperative,<br>　　　　　Defendant | Bankruptcy Case No.15-70602-JAD<br><br>Chapter 7<br><br>Adversary Case No. 16-07003-JAD<br><br>Document No: _____ |

**MOTION PURSUANT TO BANKRUPTCY RULE 9019**
**TO APPROVE SETTLEMENT OF ADVERSARY COMPLAINT**

　　COMES NOW Eric E. Bononi, Trustee, by and through his special counsel, David K. Rudov, Esq. and the law firm of Rudov & Stein, P.C. and Scott M. Hare, Esq. and in support of this Motion Pursuant to Bankruptcy Rule 9019 To Approve Settlement of Adversary Complaint represents as follows:

### I. PARTIES

　　1.　　Coast to Coast Cellular, Inc. (hereinafter "Coast to Coast") was a Pennsylvania corporation formed on October 10, 1997. Coast to Coast formerly maintained a principal place of business at 1910 Minno Drive, Suite 210, Johnstown, PA 15905. On August 28, 2015, ("Commencement Date"), Coast to Coast filed a chapter 7 bankruptcy proceeding and Eric E. Bononi was appointed the Trustee of the Debtor's estate.

　　2.　　National Rural Telecommunications Cooperative (hereinafter "NRTC") was organized in 1986 under the District of Columbia Cooperative Association Act and maintains it principal place of business at 2121 Cooperative Way, Herndon, Virginia, 20171.

## II. Jurisdiction and Venue

3. The Trustee commenced this adversary proceeding on January 18, 2016, pursuant to Federal Rule of Bankruptcy Procedure 7001 and sections 105 and 541 and 542 of title 11 of the United States Code (the "Bankruptcy Code") seeking a declaration of rights and turnover of property of the Plaintiff's bankruptcy estate and related relief.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Standing Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

6. The parties have engaged in extensive settlement negotiations and have reached an agreement to settle this adversary action. Therefore, the parties file this Motion seeking approval of this settlement pursuant to Bankruptcy Rule 9019.

## III. History of the Parties

7. Coast to Coast was a Mobile Virtual Network Operator (MVNO). A MVNO is a wireless communication service provider that does not own the wireless network infrastructure over which the MVNO provides services to its own customers. Typically, a MVNO enters into business agreements with larger and more established mobile network operators to obtain bulk access to network services at wholesale rates. MVNO's contract with larger wireless carriers to gain access for the MVNO's own customers and provide additional revenue to those carriers from sale of their unused bandwidth.

8. On December 19, 2012, Coast to Coast became a member of NRTC (see, Exhibit "A"). Coast to Coast joined the NRTC to receive the benefits of using NRTC's wholly owned MVNO, *Telispire* ®, and provide discounted cellular access to the customers of Coast to Coast. As a cooperative patron of NRTC, Coast to Coast is entitled to patronage capital distributions from NRTC, as determined by the Board of Directors of NRTC on an annual basis. Specifically, as a member and patron of NRTC, Coast to Coast received the following patronage capital allocations:

    a.    based upon its use of the NRTC network, Coast to Coast received a cash payout equal to 30% of that year's net taxable savings ("Current Year Patronage"); and,

    b.    an increase of 70% of the current year's allocation in the form of a Qualified Patronage Capital Certificate ("Retirement Patronage").

9. On account of its capital credit refunds in the Current Year Patronage identified in paragraph 8(a) above, Coast to Coast received the following payments:

    a.    a payment of $338,050.00 on May 31, 2013 for calendar year 2012;

    b.    a payment of $186,889.79 on May 30, 2014 for calendar year 2013; and,

    c.    a payment of $113,513.68 on June 5, 2015 for calendar year 2014.

10. On account of its Retirement Patronage identified in paragraph 8 (b) above, as of the Commencement Date, Coast to Coast maintained a Patronage Capital Balance of $1,909,741.26 (see, Exhibit "B"). The Trustee has come to learn that the Patronage Capital Balance is not presently "liquid" nor redeemable nor likely to be retired by NRTC for cash in the foreseeable future. The Trustee's understanding is consistent with the verified Schedules of Assets and Liabilities filed by the Debtor, in which the Debtor identified the Coast to Coast Patronage Balance as follows:

| 35. Other personal property of any kind not already listed. Itemize. | National Rural Telecommunications Cooperative (NRTC) Patronage Account, Patronage Capital Balance as of 6/5/2015 $1,909,741.26, (Current Patronage Retirement Year - 2001) When and if Capital account payment will occur is highly questionable. | - | Unknown |
|---|---|---|---|

11. NRTC has advised the Trustee that he is not permitted to demand early retirement of the Patronage Capital Balance nor transfer the Patronage Capital Certificates without the approval of the Board of Directors of NRTC, which approval the Board of Directors may readily withhold. The existing bankruptcy case law on these issues indicates that Bankruptcy Courts do not have the authority to override the by-laws of cooperatives when Trustees attempts to sell patronage certificates. *"Bankruptcy of cooperative member is not sufficient reason to compel farm cooperative to redeem or retire capital stock in advance of cooperative's normal schedule for capital stock redemption"*. In re Beck, 96 B.R. 161 (Bankr. C.D. Ill. 1988). *"Patronage credits are not indebtedness of cooperative association that is presently due and payable to members, but represent interest that may be paid at some unspecified later date to be determined by board of directors"*. In re Lamar Farmers Exch., 76 B.R. 712 (Bankr. W.D. Mo. 1987). *"The Bankruptcy Court could not*

*override discretionary authority cooperative bylaws granted the cooperative board to consent or not consent to transfer of revolving fund entitlements in absence of showing that board's exercise of authority was contrary to state or federal law or that it had been exercised against trustee in discretionary fashion"*.  In re Schauer, 62 B.R. 526 (Bankr. D. Minn. 1986).

12. During settlement discussions, the Trustee has reviewed the present and historical retirement cycles of NRTC's Patronage Capital Certificates, and has carefully considered such historical information in the context of NRTC's current and projected business operations. The Trustee has verified that the Debtor's Patronage Capital Certificates are not reasonably scheduled for retirement until approximately calendar year 2046, over 30 years following the Commencement Date. Also, the complete retirement cycle of the Coast to Coast Patronage Capital Certificates would not be reasonably completed until calendar year 2051.

13. These facts became the framework by which the Trustee and his counsel commenced and concluded settlement discussions to liquidate the Debtor's Patronage Capital Certificates. It is important to note, that NRTC was under no duty to retire these patronage certificates prematurely. NRTC was, and is, within its rights to allow these certificates to mature on their own accord. As an alternative, the Trustee also considered placing the patronage certificates "in trust" and attempting to find an investor that might be interested in purchasing the anticipated future revenue. However, after reviewing this potential "work around", the Trustee determined that the best approach was to negotiate with NRTC to liquidate this asset.

14. In conducting these negotiations, the Trustee was also guided by the Handbook for Chapter 7 Trustees that states as follows:

> **SALE OF ASSETS - PERIODIC PAYMENTS**: When an estate asset consists of future payments, the trustee should attempt to discount the future income stream to an appropriate present value and liquidate the asset as expeditiously as possible. *Handbook For Chapter 7 Trustees*. U.S. Department of Justice, Executive Office for the United States Trustee, Eff. October 1, 2102, page 4-18.
> https://www.justice.gov/ust/file/handbook_for_chapter_7_trustees.pdf/download

15. During negotiations in this matter, the parties exchanged various proposals attempting to determine a fair net present value for the Debtor's Patronage Capital Certificates,

especially mindful of the fact that: i) there is no readily available "market" for these Patronage Capital Certificates, ii) the Board of Directors of NRTC determines when and if retirements will occur; iii) the By-Laws of NRTC do not permit the transfer of Patronage Capital Certificates to any entity that is not already a Member of NRTC and the Board of Directors of NTC must approve the sale (which has never occurred); and, iv) under the current retirement protocols of NRTC these particular Patronage Capital Certificates are not scheduled to be retired, if at all, until approximately 2046.

16. After several rounds of conference calls and settlement correspondence, the parties and their counsel met in person at the NRTC offices in Herndon, Virginia on April 12, 2016. After several proposals were discussed and reviewed, the parties agreed that in consideration of the Trustee surrendering all of the Debtor's Patronage Capital Certificates, upon entry of the Order approving this settlement, NRTC will tender a payment to the Trustee in the amount of $230,000.00 against the outstanding certificates that presently total a nominal face value of $1,909,741.26. For tax compliance reasons governing cooperatives, and as part of this settlement, NRTC will also issue to the Trustee a subordinated patronage certificate that is payable upon the dissolution of NRTC, if and when that ever occurs, and pay the Trustee the amount of $500 as an initial payment for an option to repurchase the subordinated certificate within the next ten (10) years. The Trustee will either seek to make an initial distribution when he files his Trustee's Final Report or find a buyer to purchase this subordinated patronage certificate and option. A copy of the Settlement Agreement is attached as Exhibit "C".

### IV. Supporting Authority

17. The Trustee and NRTC seek approval of this Settlement Agreement under Bankruptcy Rule 9019. Bankruptcy Rule 9019(a) provides, in pertinent part, that *"[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019*. The Third Circuit has emphasized that *"[c]ompromises are favored in bankruptcy."* Myers v. Martin (In Re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also* In re World Health Alts., Inc., 344 B.R.291, 296 (Bankr. D. Del. 2006) (finding settlements *"generally favored in bankruptcy"*). The approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See*, *e.g.*, In re: Washington Mut., Inc. 442 B.R. 314, 327 (Bankr. D. Del. 2011); In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

18. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether the *"compromise is fair, reasonable, and in the interest of the estate."* In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (*quoting* In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); *see also* In re Capmark Fin. Grp., Inc., 438 B.R. 471, 514-515 (Bankr. D. Del. 2010). Basic to the process of evaluating proposed settlements is *"the need to compare the terms of the compromise with the likely rewards of litigation."* Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 425 (1968). The court need not be convinced that the settlement is the best possible compromise in order to approve it. Washington Mut., 442 B.R. at 328; Coram Healthcare, 315 B.R. at 330. Rather, the court's obligation is to "canvas the issues to determine whether the settlement falls above the lowest point in the range of reasonableness." Capmark Fin. Grp., 438 B.R. at 515; *see also* In re Aleris Int'l, Inc., No. 09-10478 (BLS) 2010 WL 3492664, at 9 (Bankr. D. Del. May 13, 2010).

19. The Third Circuit has set forth four criteria for a bankruptcy court to consider when evaluating a settlement proposal*: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."* Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); *see also* Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re W.R. Grace & Co., 475 B.R. 34, 77-78 (Bankr. D. Del. 2012); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

20. The Trustee and NRTC respectfully submit that the Settlement Agreement meets the requirements of Bankruptcy Rule 9019 and the criteria set forth in *In Re Martin*. Specifically, and as set forth above, the Trustee has been able to negotiate a sizable present value payment of Debtor's Patronage Capital Certificates that have no other readily available sources for liquidation and payment of the claims of the creditors in this case. Most significantly, compared to the prospects for this claim litigation, under governing law the Trustee will have no ability to compel Defendant to purchase the Patronage Capital Certificates at *any* particular time or for *any* particular price. Rather, like any cooperative member, even if successful in the litigation of the claims in this adversary, the Trustee would be left to await payment of the patronage balance, assuming such payment even occurs, on the schedule that may be set by the Defendant's Board of Directors over the following decades. Given these litigation alternatives, the Trustee has concluded, in the exercise

of his business judgment, that the proposed settlement is in the best interests of the estate and the creditors.

WHEREFORE, the parties pray that the attached ORDER be entered.

Respectfully submitted,
Rudov & Stein, P.C.

*/s/ David K. Rudov*
David K. Rudov, Esq.
Pa. I.D. # 35579
Special Counsel for Eric E. Bononi, Trustee

100 First Avenue, Suite 500
First & Market Building
Pittsburgh, PA 15222
drudov@rudovstein.com
Tel:  412-281-7300

and

*/s/ Scott Michael Hare*
Scott Michael Hare
Pa I.D. #63818
Special Counsel for Eric E. Bononi, Trustee

The Frick Building - Suite 1806
437 Grant Street
Pittsburgh, PA  15219

Scott@ScottLawPGH.com
Tel: 412-338-8632